IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Transcend Services, Inc., a Delaware corporation, | Case No. 10-cv-00303 (DWF/JJG) |
| Plaintiff/Counter-Defendant | |
| v. | **FIRST AMENDED COMPLAINT** |
| Farnam Street Financial, Inc., a Minnesota corporation, | |
| Defendant/Counter-Plaintiff | |

Plaintiff Transcend Services, Inc. ("Transcend") files this Complaint against Defendant Farnam Street Financial, Inc. ("Farnam") and shows the Court the following:

## PARTIES

### 1.

Plaintiff Transcend is a corporation organized under the laws of the State of Delaware with its principal place of business located at One Glenlake Parkway, Suite 1325, Atlanta, Georgia, 30328.

### 2.

Defendant Farnam is a corporation organized under the laws of the State of Minnesota with its principal place of business located at 240 Pondview Plaza, 5850 Opus Parkway, Minnetonka, Minnesota 55343.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Complete diversity of citizenship exists between Plaintiff and Defendant and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

4.

This Court has personal jurisdiction over Farnam because Farnam is incorporated in Minnesota and has its principal place of business in Minnesota. Moreover, Farnam conducts a substantial amount of business in Minnesota, owns title to property located in the State of Minnesota, and has derived substantial revenue from goods used and services rendered in Minnesota.

5.

While Transcend contends that the proper venue for this action is the Northern District of Georgia, venue is also appropriate in this Court pursuant to 28 U.S.C. § 1391 because Farnam resides in this District.

## STATEMENT OF FACTS

6.

Farnam is a national commercial finance company, which leases equipment such as computer hardware, software, telecommunications equipment, office furniture and machines, manufacturing and construction equipment.

16590788.3

7.

Transcend is a national medical transcription outsourcing company providing services to hospitals, health systems, and clinics.

8.

In Spring 2005, Farnam offered to enter into a finance lease agreement with Transcend, pursuant to which Farnam agreed to lease to Transcend certain telephone equipment and hardware and software equipment which would be identified in several successive Lease Schedules.

9.

During negotiations, Transcend advised Farnam that it intended to purchase the Equipment at fair market value upon expiration of the base lease terms.

10.

As such, through the negotiations, Farnam represented to Transcend that: (a) the lease would be a finance lease; and (b) Transcend could purchase the equipment at the end of term for fair market value and other commercially reasonable terms.

11.

Farnam acknowledged Transcend's notice of intent to purchase the Equipment and has, throughout the Parties' relationship, understood and recognized that Transcend intended to purchase the Equipment for fair market value at the end of each base lease term.

- 3 -

12.

On June 10, 2005, the Parties executed a Master Lease Agreement ("Master Lease"). A true and correct copy of the Master Lease Number TRO051905 is attached hereto as Exh. A. The Master Lease defines "Equipment" to include collectively all of the equipment identified on the Lease Schedules. The Parties agreed that the Equipment to be financed under the Master Lease would be identified in several separate Lease Schedules as Transcend acquired and financed the Equipment. The Parties agreed that the base lease term would begin to run upon acceptance of each Lease Schedule. However, the Master Lease by its terms includes all of the Equipment leased to Transcend by Farnam.

13.

The Master Lease does not provide for the purchase of the Equipment. Rather, the Master Lease provides only for automatic evergreen renewal of the lease (*i.e.*, an evergreen rental agreement) or for return of the Equipment.

14.

Thus, to create a written expression of the Parties' agreement to allow Transcend to purchase all of the Equipment at fair market value, on June 10, 2005, the same day the Parties executed the Master Lease, the Parties appended and incorporated a fully executed Fair Market Purchase addendum. The Fair Market Purchase addendum provided that the "Lessee shall have the option to purchase the Equipment in its physical possession . . . for fair market value." A true and correct copy of the Fair Market Purchase Addendum is attached hereto as Exh. B. The capitalized term "Equipment" is defined in the Master Lease.

- 4 -

15.

The Fair Market Purchase addendum, offered by Farnam and accepted by Transcend, is intended to be the written expression of the Parties' agreement to allow purchase or renewal of the Equipment at the end of the original term based on fair market value of the Equipment and other commercially reasonable terms.

16.

In practice, without an addendum, equipment must be returned at the end of any lease term. This right creates a risk of over-reaching by Farnam because the equipment must be returned unless the Lessor pays Farnam whatever price, related or unrelated to the value of the equipment, demanded by Farnam. Thus, the Fair Market Purchase addendum uses the term "fair market" to objectively value the Equipment and serves as an objective mechanism to break any dead-lock in the event the parties are unable to mutually agree upon a price for the Equipment.

17.

In reliance upon Farnam's representations that the lease would be a finance lease and that it could purchase the Equipment at the expiration of the original base term for fair market value, Transcend paid deposits of $44,213.79. Farnam accepted and has retained the $44,213.79.

18.

Pursuant to the Master Lease and Fair Market Purchase addendum, the Parties entered into three (3) separate Lease Schedules. True and correct copies of Lease Schedule Nos. 001-003X are attached hereto as Exhs. C-H.

19.

The monthly payment for a commercial finance lease is set according to the lease rate factor. A lease rate factor is calculated by dividing the monthly payment by the acquisition cost of the equipment. The monthly payment equals the capitalized cost of the equipment spread over the term of the lease at the accepted discount rate (the implied interest rate, which includes the lessor's profit). The capitalized cost equals the acquisition cost of the equipment minus the present value of the projected residual at the end of the lease term.

20.

Thus, in order to calculate the lease rate factor, the lessor must project a residual value. The projected residual interest of the leased equipment is the expected depreciated value at the end of the lease term, which is the anticipated fair market value as of that future date. The projected residual is an essential element to calculating the monthly lease payment.

21.

Farnam failed to disclose material terms upon which it calculated a lease rate factor. For example, Farnam failed to disclose the discount rate and projected residual value to Transcend.

22.

In Lease Schedule No. 001, Farnam offered to lease Nortel telephone equipment to Transcend at a lease rate factor of 0.019170. *See* Exh. C. Transcend accepted this offer and paid a deposit of $820.00. *Id.* Farnam accepted and retained the deposit.

- 6 -

23.

The acquisition cost of the telephone equipment was $51,275.00. Thus, the Parties executed Lease Schedule 001R on December 19, 2005. *See* Exh. D. Transcend agreed to lease the Nortel telephone equipment for a term of 60 months. Farnam, however, unilaterally increased the lease rate factor to 0.019522, without disclosing the increase to Transcend. Transcend paid $1,001 per month. At the end of the 60-month term, Transcend will have paid $60,060.00 to Farnam, resulting in a profit of approximately $9,000.00, prior to any buyout of the equipment at the end of the lease term.

24.

On June 29, 2005, in Lease Schedule No. 002, Farnam offered to lease personal computers to Transcend at a lease rate factor of 0.027795. *See* Exh. E. Transcend accepted this offer and paid a security deposit of $16,677.00. *Id.* Farnam accepted and retained this money.

25.

The cost of the equipment was $540,953.00, which was less than anticipated. So, on September 30, 2005, the Parties executed Lease Schedule No. 002R. *See* Exh. F. Once again, Farnam unilaterally and without disclosing the increase to Transcend, increased the lease rate factor to 0.02888. Transcend paid $15,625.00 per month for 36 months. At the end of the renewed term, Transcend will have paid $649,096.00, resulting in approximately $110,000.00 in profit to Farnam.

26.

In Lease Schedule No. 003, executed on December 20, 2005, Farnam offered to lease various computer hardware and software to Transcend at a lease rate factor of 0.041664.  *See* Exh. G.  Transcend accepted the offer and paid a security deposit of $26,258.00.  Farnam accepted and retained this money prior to the buyout of the equipment at the end of the lease term.

27.

The cost of the equipment was $589,117.00, which was higher than anticipated. Transcend paid a deposit of $26,716.79.  The Parties executed Lease Schedules 003R and the 003X.  *See* Exh. H.  Again, Farnam did not disclose its unilateral increase in the lease rate factor to 0.042628 for the initial term, 0.170513 for the renewed term, and 1.136752 for the second renewal term.  Transcend paid or will pay $25,113.00 for 48 months, thus paying a total of $1,205,424.00 for the equipment which cost $589,117.00.  Farnam's profit is therefore $616,307.00 prior to any buyout of the equipment at the end of the lease term.

28.

Farnam was aware of the nature of Transcend's business and that the telephone equipment, computer hardware and software would be installed in and used at locations throughout the country.  Farnam was aware at the time of negotiation of each Lease Schedule that Transcend would not be able to de-install or return the Equipment.

29.

16590788.3

The lease rate factors used in Lease Schedule No. 003X include combined rates that take into account the fact that Farnam was amortizing the software and intangibles to a zero end of term cost.

30.

The Lease Schedules reflected lease rate factors that project residual value of the hardware.  However, Farnam failed to disclose the projected residual, which is a material term.

31.

In total, Farnam paid $1,181,345.00 to acquire the Equipment and will have received $2,015.580.00 in payments from Transcend by the end of the Lease terms.  At the end of the lease terms, the total monthly payments for all Lease Schedules will result in Farnam receiving $834,235.00 more than the Equipment's acquisition cost.

32.

Farnam has demanded payment of an additional $500,000.00, over and above its $834,235.00 profit.  Farnam also seeks to retain the $44,214.79 paid in security deposits.

33.

The Fair Market Purchase addendum was attached to Lease Schedule No. 001.

34.

The Fair Market Purchase addendum applies to all Lease Schedules, including Lease Schedule Nos. 002R-003X.

35.

Alternatively, through mutual mistake, or through fraud on the part of Farnam, the Fair Market Purchase addendum was not attached to Lease Schedules 002R-003X.

36.

The Equipment identified in Lease Schedules Nos. 001R-003X is telephone equipment, computer hardware, software, and other equipment all of which is inter-related and dispersed throughout the country such that Transcend has only two choices: to continue to lease all of the Equipment or to purchase the Equipment.

37.

Farnam is aware and has always known, since the time of the Lease Proposal and lease negotiations that the series of Lease Schedules attached to the Master Lease comprise telephone, computer equipment, and software that is inter-related, dispersed throughout the country, and incapable of reassembly and return.

38.

Transcend has reconfirmed that it intended, as it had stated since the inception of the Parties' relationship, to purchase the Equipment for fair market value pursuant to the Fair Market Purchase addendum.

39.

Farnam acknowledged and agreed to allow Transcend to purchase all of the Equipment at fair market value.

40.

The Master Lease itself does not include a provision allowing Transcend to purchase the Equipment at the end of the lease term.  Rather, the Master Lease provides only that Equipment must be returned upon termination of the Master Lease or the lease term will be automatically extended for an additional 12-month period every year forever.

41.

The Fair Market Purchase addendum, however, permits Transcend to elect to purchase the Equipment at fair market value.

42.

Transcend reasonably relied upon Farnam's acceptance of its offer to enter into a finance lease and purchase the Equipment at fair market value.  In reliance upon such representations, Transcend acquired, leased and continued to use, maintain, and retain the Equipment.

43.

If Farnam refuses to allow Transcend to purchase the Equipment, Farnam will convert the Master Lease into an evergreen rental agreement.

44.

Additionally, the "fair market value" valuation is an essential term of the Fair Market Purchase addendum that avoids over-reaching and ensures that Transcend will be able to purchase the Equipment at its fair market value rather than a number arbitrarily set by Farnam.

45.

Paragraph 7 of the Master Lease entitled "Return to Lessor" is unconscionable.

46.

Paragraph 16 ("Event of Default") and Paragraph 17 ("Remedies") are unconscionable.

47.

Transcend has provided notice that it intends to purchase the Equipment at fair market value or pursuant to the Fair Market Purchase addendum and the Parties' agreements.

48.

However, Farnam demands a purchase price that grossly exceeds fair market value and was unilaterally and arbitrarily selected by Farnam, or demands that the Lease become an evergreen rental agreement.

49.

Farnam's conduct is a direct breach of the Master Lease and the Fair Market Purchase addendum.

50.

Farnam agreed to allow Transcend to purchase the Equipment, but has delayed in the price negotiations so as to force Transcend into an "automatic" one-year extended term for Lease Schedule No. 003X, notwithstanding Transcend's timely notice of

termination, timely notice of its offer to purchase the equipment for fair market value, and its timely responses to Farnam's communications.

51.

Farnam has attempted to force Transcend into automatic annual renewals of Lease Schedule Nos. 001R-003X by refusing to accept a fair market value purchase price; refusing to negotiate a purchase price in good faith; failing to act timely and in good faith; and otherwise refusing to comply with the Fair Market Purchase addendum.

52.

Transcend has offered to purchase the equipment at fair market value.

53.

Farnam has demanded payment for the Equipment which grossly exceeds fair market value. Farnam demands a windfall of approximately $500,000.00 for Equipment where a fair buyout would be significantly less.

54.

Farnam failed to respond timely to several payment offers and has otherwise unilaterally delayed the price negotiations. Farnam has not negotiated the buyout price in good faith, but rather has delayed in order to force "automatic" renewals, in order to receive additional windfalls to which it is not legally entitled and which are unconscionable.

55.

Farnam will receive an unentitled unconscionable windfall in the interest it will charge to finance its actual residual in the Equipment identified on Lease Schedules, for

- 13 -

which it has already been paid.  Additionally, by projecting a new residual value of an undisclosed number but nevertheless being able to demand that Transcend purchase the Equipment at whatever price it unilaterally demands at the end of the extended lease term pursuant to the Fair Market Purchase addendum, Farnam will receive an additional, unentitled and unconscionable windfall of the difference between the end of term fair market value and the projected residual.

56.

Transcend is reasonably apprehensive that Farnam's wrongful conduct will continue.

57.

Farnam, however, has demanded an unconscionable price that is not fair market value and equates a usurious interest rate.

58.

Farnam refuses to deliver title to Equipment identified in Lease Schedules, thereby causing damage to Transcend.

59.

Transcend will tender payment of the fair market value of the Equipment identified in Lease Schedules.

60.

Transcend has incurred attorneys' fees, consultant fees, and costs as a result of Farnam's breach of the Master Lease and Fair Market Purchase addendum.

16590788.3

61.

All conditions precedent to this action has been satisfied.

62.

To the extent a condition precedent has not been satisfied, Farnam cannot take advantage of any alleged failure of a condition precedent because Farnam has frustrated performance of that condition.

## COUNT I - BREACH OF CONTRACT

63.

Transcend specifically realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 62 above.

64.

Farnam is obligated, under the Master Lease and the Fair Market Purchase addendum, to accept payment of the fair market price for the Equipment and to deliver title to the Equipment identified on the Lease Schedules to Transcend.

65.

Farnam's failure to deliver title timely has and will continue to disrupt Transcend's on-going business.

66.

Farnam is obligated under the Master Lease and Fair Market Purchase addendum to sell the Equipment at fair market value.

16590788.3

67.

Farnam has breached its obligations by demanding a price that is not commercially reasonable and failing to deliver title to Transcend.

68.

Farnam has breached its obligations by refusing to accept a fair market value price in exchange for transfer of the title of the Equipment in the Lease Schedules.

69.

As a result of Farnam's breaches of the Agreement, Transcend is entitled to damages in an amount to be proven at trial, but not less than $75,000.00.

## COUNT II – BREACH OF CONTRACT

70.

Transcend specifically realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 69 above.

71.

Every contract includes an implied covenant of good faith and fair dealing requiring that one party not "unjustifiably hinder" the other party's performance of the contract.

72.

Farnam has unjustifiably hindered Transcend's performance of the Master Lease.

73.

Farnam has unjustifiably refused to accept fair market value as payment for the Equipment.

- 16 -

74.

Farnam has refused and failed to cooperate and negotiate a purchase price in good faith.

75.

Farnam has intentionally delayed the negotiations so as to force an automatic renewal of the Lease Schedules.

76.

As a result of Farnam's breaches, Transcend is entitled to damages in an amount to be proven at trial, but not less than $75,000.00.

## COUNT III – DECLARATORY JUDGMENT

77.

Transcend specifically realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 76 above.

78.

As detailed herein, an actual and justiciable controversy presently exists between Transcend and Farnam concerning the Master Lease and the Lease Schedules.

79.

Transcend has no adequate remedy at law and will be irreparably injured if it is not able to purchase the Equipment in all of the Lease Schedules for fair market value. Additionally, Transcend is entitled to have any doubt removed as to the enforceability of the automatic renewal and penalty and late charges provisions in the Master Lease and

- 17 -

Farnam's obligations under the Master Lease, Lease Schedules and Fair Market Purchase addendum.

80.

Declaratory relief is appropriate because it will serve a useful purpose in clarifying and settling the legal relations at issue in this litigation.  Furthermore, declaratory relief will afford relief from the uncertainty and controversy giving rise to this proceeding as it relates to the Parties' rights under the Master Lease and Fair Market Purchase addendum.

81.

Pursuant to 28 U.S.C. §§ 2201, 2202 and Fed.R.Civ.P. Rule 57, this Court has the power to declare the rights of the parties hereto.

82.

Transcend is entitled to declarations that: (1) the automatic renewal, penalty and late charges provisions in the Master Lease are unconscionable; (2) Farnam is required to transfer title to Equipment in Lease Schedules to Transcend; or (3) Farnam is required to sell the Equipment for its current for market value.

## <u>COUNT IV – REFORMATION OF CONTRACT</u>

83.

Transcend specifically realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 82 above.

84.

There is a valid agreement between Farnam and Transcend expressing their real intentions, which is to have the Fair Market Purchase addendum apply to all Lease Schedules and all Equipment covered therein.

85.

The Master Lease Agreement, Lease Schedules and Fair Market Purchase addendum fail to express the real intentions of the Parties.

86.

This failure was due to a mutual mistake of the Parties, or a unilateral mistake accompanied by fraud or inequitable conduct by Farnam.

87.

To the extent that the Fair Market Purchase addendum is not already included in Lease Schedule Nos. 002R-003X, Transcend is entitled to an Order reforming the Master Lease and all associated Lease Schedules to include the Fair Market Purchase addendum.

**<u>COUNT V – ANTICIPATORY REPUDIATION</u>**

88.

Transcend specifically realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 87 above.

89.

Before the performance was due, Farnam expressly renounced the Parties' executory contract and gave notice that it will not allow Transcend to purchase the Equipment at fair market value.

90.

Farnam's refusal to perform was in effect an unqualified renunciation or repudiation of the Master Lease Agreement and Fair Market Addendum and, therefore, is in default thereunder.

91.

Transcend is entitled to an Order canceling the Master Lease as to the Lease Schedules based upon Farnam's default thereunder.  Additionally, as a result of Farnam's breaches, Transcend is entitled to damages in an amount to be proven at trial, but not less than $75,000.00.

## COUNT VI – FRAUD

92.

Transcend specifically realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 91 above.

93.

Farnam knowingly and intentionally made false representations to Transcend that:

(a)     Transcend could purchase all the Equipment or renew the Master Lease at the end of the original term upon commercially reasonable terms;

(b)     Farnam would sell the Equipment at fair market value, which included the equipment leased in Lease Schedule Nos. 002R-003X; and

(c)     Farnam would allow Transcend to purchase the Equipment at fair market value.

16590788.3

94.

Farnam failed to disclose to Transcend:

(a)     That it was actually aware that the Equipment could not be de-installed or returned;

(b)     That Transcend would not in reality be able to return the Equipment, such that Farnam could, at its sole discretion, demand whatever price it wants to demand, regardless of the true value of the Equipment;

(c)     That it would not treat the Master Lease as a finance lease, but rather as an evergreen rental agreement;

(d)     The actual purchase price of the Nortel telephone equipment;

(e)     The interest rate and projected residual and other key terms used in determining the lease rate factor;

(f)     The revised lease rate factors in Lease Schedule Nos. 001R-003X; and

(g)     The fact that it would demand usurious windfalls at the end of the Lease.

95.

Upon information and belief, Farnam was aware that its representations were false at the time they were made.

96.

Farnam's statements and activities were material and, upon information and belief, were intended to deceive, manipulate and injure Transcend.

97.

Transcend reasonably relied upon Farnam's statements to execute the Master Lease, Fair Market Purchase addendum and Lease Schedules.

98.

Farnam's conduct was and is willful and in bad faith.

99.

By making intentional and knowing false misrepresentations, Farnam has acted with malice, wantonness, oppression and with a conscious indifference to consequences and/or the specific intent to cause Transcend harm.

100.

As a result Farnam's intentional and knowing false misrepresentations, Transcend is entitled to damages in an amount to be proven at trial.

## COUNT VII - VIOLATION OF THE MINNESOTA CONSUMER FRAUD ACT

101.

Transcend specifically realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 100 above.

102.

Farnam's obligations to lease the Equipment identified in Lease Schedule Nos. 001-003X is the sale of a good or service.

103.

Farnam has knowingly and falsely represented to Transcend that:

16590788.3

(1)    Farnam could unilaterally and arbitrarily set the sales price of the equipment at any arbitrary value rather than the fair market value;

(2)    Farnam would take advantage of the mutual mistake or fraud and force Transcend into an evergreen rental agreement, in violation of the Statute of Frauds, and the Uniform Commercial Code; and

(3)    Farnam would demand that Transcend pay Farnam multiple windfalls without legal or statutory obligation.

104.

Upon information and belief, Farnam has a pattern of fraudulent conduct and false advertising with the general public, including knowingly and falsely:

(1)    Making verbal representations during negotiations to induce the customers to execute lease agreements but later disclaiming any knowledge of such representations;

(2)    Offering to sell equipment at end of term for amounts in gross excess of the actual residual or their fair market value;

(3)    Through trickery and misdealing attempting to force evergreen leases upon its customers; and

(4)    Attempting to extract interest rates that are usurious for finance security agreements.

105.

The facts that Farnam misrepresented or failed to disclose to Transcend were material in that they related to the commercial reasonableness of the transaction.

- 23 -

Accordingly, these are facts that Transcend would have considered important in deciding whether to participate in the Master Lease transaction.

106.

Upon information and belief, Farnam made such misrepresentations or concealments of material fact in the conduct of trade or commerce with the intent that Transcend and others similarly situated rely upon the misrepresentations or concealments.

107.

Provisions in the Master Lease are unconscionable.

108.

As a result of Farnam's acts, Transcend has suffered and continues to suffer and incur irreparable injury. Unless enjoined by this Court, Farnam will continue these acts, thereby causing Transcend further immediate and irreparable damage.

109.

Transcend is entitled to damages pursuant to M.S.A. §325F.69.

## COUNT VIII – EXPENSES OF LITIGATION, INCLUDING ATTORNEYS' FEES

110.

Transcend incorporates by reference the allegations of Paragraphs 1- 109 as if fully stated in this Count.

16590788.3

111.

Transcend is entitled to an award of its expenses of litigation, including attorneys' fees.

WHEREFORE, based on the allegations set forth herein, Plaintiff Transcend prays that this Court grant relief as follows:

(a)     On Counts I & II of the Complaint, a judgment for Transcend for breach of contract and compensatory damages in an amount to be proven at trial but not less than $75,000.00;

(b)     On Count III of the Complaint, an Order declaring that: (1) the automatic renewal and penalty and late charges provisions in the Master Lease are unconscionable; (2) Farnam is required to transfer title to Equipment in Lease Schedules to Transcend; and (3) Farnam is required to sell the Equipment for its current for market value;

(c)     On Count IV of the Complaint for Reformation, an Order reforming the Master Lease and all associated Lease Schedules to include the Fair Market Purchase addendum;

(d)     On Count V of the Complaint for Anticipatory Repudiation, an Order canceling the Master Lease as to the Lease Schedules based upon Farnam's default thereunder;

(e)     On Count VI of the Complaint, a judgment for Transcend for fraudulent misrepresentations in an amount to be proven at trial but not less than $75,000.00;

(f)     On Count VII of the Complaint, a judgment for Transcend for injunctive relief;

(g)   A judgment for attorneys' fees and costs of litigation; and

(h)   Such other and further relief as this Court may deem just and proper.

### DEMAND FOR A JURY TRIAL

Pursuant to Fed.R.Civ.P. 38, Transcend hereby demands trial by jury as to all issues so triable in this action.

**Transcend hereby reserves its right to file a Motion for Leave to Amend its Complaint to Add a Count for Punitive Damages**

Respectfully submitted this 16th day of April, 2010.

**CARLTON FIELDS, P.A.**


*/s/ Alison Danaceau*
Alison Danaceau
Georgia Bar No. 203755
[*admitted pro hac vice*]
1201 West Peachtree Street
Suite 3000
Atlanta, GA  30309
404-815-3400
404-815-3415 (fax)
adanaceau@carltonfields.com

**GREENE ESPEL P.L.L.P.**

Kathleen K. Statler, Reg. No. 161809
John W. Ursu, Reg. No. 032257X
200 South Sixth Street
Suite 1200
Minneapolis, MN 55402
Direct: (612) 373-8327
Fax: (612) 373-0929
kstatler@greeneespel.com
jursu@greeneespel.com
***Attorneys for Plaintiff Transcend Services, Inc.***

- 26 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Transcend Services, Inc., a<br>Delaware corporation,<br><br>                       Plaintiff/Counter-Defendant<br><br>v.<br><br>Farnam Street Financial, Inc., a<br>Minnesota corporation,<br><br>                    Defendant/Counter-Plaintiff. | Case No. 10-cv-00303 (DWF/JJG)<br><br><br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that on April 16, 2010, I caused the following document:

- **First Amended Complaint**

to be electronically filed with the Clerk of Court using the CM/ECF filing system which

sent electronic notifications to:

- Donald T. Campbell, donald.campbell@leonard.com
- Jeffrey A. Ehrich, jeff.ehrich@leonard.com


*/s/ Alison Danaceau*
Alison Danaceau [*admitted pro hac vice*]